## Williams, Admr., etc., et al. v. Deskins.

(Decided May 5, 1922.)

### Appeal from Pike Circuit Court.

1. Adverse Possession—Evidence.—The evidence examined and, as set out in the opinion, held to be abundantly sufficient to uphold the judgment finding the land in controversy as included in appellee's title papers and excluded from those of appellant.
2. Adverse Possession—Limitation of Actions.—Adverse possession, if otherwise sufficient, must be continued for the statutory period of fifteen years after the right to maintain the suit existed before it can ripen into a title.
3. Adverse Possession—Trespass.—Occasional acts of trespass, though persisted in for more than fifteen years, is not such an adverse holding as will eventually perfect title.

STRATTON & STEPHENS and W. K. STEELE for appellants.

WILLIS STATON and J. B. DESKINS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This action in ejectment brought by appellee and plaintiff below, Sarah Deskins, against appellants and defendants below, who are the heirs of Achilles Williams, involves the title to a small triangular piece of land in Pike county, the exact acreage not shown. A denial of plaintiff's title and a plea of adverse possession were contained in the answer.

Appropriate pleadings made the issues and upon trial there was a verdict and judgment in favor of plaintiff which defendants seek to reverse on this appeal prosecuted by them. The only complaints against the judgment made here in brief of counsel (though others are made in the motion for a new trial) are: (1) that the court erred in overruling defendants' motion for a peremptory instruction in their favor, and if mistaken in this, then (2) that the verdict is flagrantly against the evidence. Since the disposition of each of those complaints calls for a brief review of the evidence, as contained in the record, they will be considered and determined together.

Many years ago, William Williams, the father of Achilles Williams, owned a large body of land in Pike county and before his death, which occurred before that of his wife, Mary Williams, he made a division of the larger portion of his land among his children and put

each in possession of the portion allotted to them re-
spectively. For some reason he did not execute a deed to
his son, Achilles, and after his death the other heirs ex-
ecuted a deed to him for the tract allotted to him and of
which he took possession. There was a tract between the
one allotted to Achilles and the one to Mrs. McGinnins,
a daughter of William Williams, which the latter re-
tained, and after his death it was set apart to his widow,
Mary Williams, as her dower, but, whether that was done
in a judicial proceeding does not appear. The land in
controversy is a part of that dower interest. After the
death of Mary Williams, in a proceeding instituted in
the Pike circuit court for that purpose, the portion of
William Williams' land which was allotted to his widow
as dower was sold for the purpose of division among the
heirs. At that sale A. J. Hatcher, R. M. Ferrell and
Jane Deskins became the purchasers, to whom the com-
missioner executed a deed, and plaintiff is the remote
vendee of those purchasers. The dower interest which
was sold in that suit, as stated above, joined on one side
the portion of land allotted to Achilles Williams. The
disputed land is in the shape of the letter "V" with the
open top turned nearly to the northwest. It is the con-
ention of plaintiff that the line of defendants' land ex-
tends no further east than one enclosing the top of that
letter in the described position; while defendants claim
that their line runs with the stems of that letter in the
same position so as to include the land in controversy.

The beginning of the description of the lands allotted
to Achilles Williams in the deed heretofore referred to,
which was executed by the heirs of William Williams to
him on May 25, 1866, says: "Commencing on a black oak
on the point of the ridge on the north side of Johns creek
running to a black walnut standing on the bank of said
creek," which, according to all the proof, disputed by
none, forms and describes the line as contended for by
plaintiff. Not only does such fact appear from the testi-
mony of all the witnesses, but it also appears from the
only map filed with the record on this appeal. The judg-
ment ordering the sale of the dower interest of Mary
Williams directed the commissioner to sell "All that part
of the land on Johns creek in Pike county, Kentucky, and
between the lines of the lot of land of Achilles Williams
and Mary M. McGinnins belonging to the estate of Wm.
Williams, deceased." In an amended petition in the suit
to procure that sale it was first described by metes and

bounds and then followed by substantially the same recitation as is contained in the judgment. Before the judgment of sale in that case, a survey of the land allotted Achilles Williams was made pursuant to an order of court, and the report of the surveyor describes the disputed line precisely as contained in his deed, *supra,* from the other heirs of William Williams, executed in 1866.

The deed of the commissioner to Hatcher, et al., has two calls in its description reading: "N 17 E. 60 P. to a walnut; N. 78 E. 11 P. to a black oak." The last line closes the top of the letter "V" in the illustration, and the deed then recites: "Also all the lands lying between the tract of land laid off to James H. McGinnins' wife and the farm of William Williams, Sr., being all the land owned by William Williams, Sr., at his death." The answer filed by Achilles Williams in the suit to sell the dower interest expressly admitted that the statements in the petition therein were true, one of which was a description of the dower interest conforming to the line contained in the deed executed to him by the heirs of William Williams in 1866.

The only way by which this apparently conclusive record testimony, substantiating plaintiff's contention, is attempted to be refuted is by the oral testimony of two of the heirs of Achilles Williams and one or two other witnesses stating that when the dower interest to Mary Williams was first allotted the line ran from the oak above mentioned in a southeast direction to a pile of rock at the point of the "V" in the above illustration, thence slightly north of west to the black walnut, thus including the disputed land, and that, as stated in brief of counsel for appellants, "The calls in the dower deed, or in deed (judgment) for sale of the dower tract, omitted the two calls, the one from walnut to pile of rocks and from pile of rocks to oak," which is wholly insufficient to overcome the above recited record evidence. If, however, it were otherwise, the judgment in the suit to sell the dower to which Achilles Williams was a party and in which he filed his answer, as we have referred to, would estop him and his heirs from making the present contention.

But, it is insisted that defendants and those through whom they claim have held such adverse possession of the land in controversy as to ripen in them the title thereto, and for that reason the judgment is erroneous. But this contention is about as far from being sustained as the first one considered. It is true it appears that

somewhere about ten or eleven years prior to the filing of this suit Achilles Williams made a slight clearing on the land in controversy and, perhaps, occasionally trespassed upon it by cutting timber; but the claimed possession, if otherwise sufficient, was not of such duration as to perfect title in the possessor; nor did the occasional acts of trespass constitute the requisite possession for that purpose, as has been frequently held by this court.

We, therefore, conclude that the grounds urged for a reversal are wholly without merit and the judgment is accordingly affirmed.